UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MICHAEL S. WINARSKI, *et al.*,  )
)
              Plaintiffs  )
)
        vs.  )      CAUSE NO. 2:04-CV-390RM
)
GERRY NANNENGA, *et al.*,  )
)
           Defendants  )

<u>OPINION AND ORDER</u>

On September 22, 2004, plaintiffs Michael Winarski, Andrew Farkas, Dennis Fleener, Lawrence Massa, and John Sikich filed a complaint on behalf of themselves and all other similarly situated individuals (current or former members of the Northwest Indiana Regional Council of Carpenters). This purported class action suit named as defendants Messrs. Gerry Nannenga, James Bohlen, David Tharp, Mark Danielson, Terry Sherwood, Robert Beiker, John D. Brugos, Douglas Robinson, Carl Lakomek, and Robert Novak, individually and as current or former trustees of the Indiana Regional Council of Carpenters Pension Trust Fund, a/k/a Northwest Indiana Regional Council of Carpenters Pension Trust Fund, the Board of Trustees of the Indiana Regional Council of Carpenters Pension Trust Fund, a/k/a Northwest Indiana Regional Council of Carpenters Pension Trust Fund (the "Board"), the Administrator of the Indiana Regional Council of Carpenters Pension Trust Fund, a/k/a Northwest Indiana Regional Council of Carpenters Pension

Trust Fund (the "Administrator"), Kevin Pastrick[1], Carl Paul Ihle, Jr., Sand Creek Sales & Development, Inc., Peter Manous, Deborah Nannenga, Olympic Services, Lake Erie Land Company, Indiana Regional Council of Carpenters Pension Trust Fund, a/k/a Northwest Indiana Regional Council of Carpenters Pension Trust Fund (the "Fund"), and Builders and Carpenters LLC.

On November 29, defendants Novak and Bohlen separately filed cross-claims against defendants Beiker, Brugos, Danielson, Ihle, Lakomek, Manous, both Nannengas, Olympic Services, Pastrick, Robinson, Sand Creek Sales & Development Inc., Sherwood, and Tharp. The cross-complaints ask the court to hold the cross-defendants liable for indemnification and contribution of Mr. Novak and Mr. Bohlen if any judgment is rendered against them, and for costs, including reasonable attorneys fees.

On December 7, the court granted the plaintiffs leave to file an amended/corrected complaint deleting some claims and correcting others. On December 21, the plaintiffs moved to certify themselves as a FED. R. CIV. P. 23 class; three days later, they moved to consolidate the case with one brought by Mr. Brugos and Mr. Robinson (solely in their capacities as fiduciaries and

---

[1] The complaint spelled Mr. Pastrick's name properly in the identification of parties portion of the complaint, but incorrectly spelled Mr. Pastrick's name as "Pasternack" in the various claims. There has been no challenge by Mr. Pastrick, and a fair reading of the complaint puts Mr. Pastrick on notice of the claims against him, so there is no need to address the plaintiffs' concern that they could amend the complaint to correct the spelling error.

members of the special litigation committee), the board of trustees of the Pension Fund, and Builders and Carpenters LLC (collectively called the "Brugos Action").[2]

From December 27 through January 21, the defendants filed 13 motions to dismiss to which the plaintiffs responded in a consolidated brief. On March 16, the Fund requested leave to file a reply in excess of the page limit imposed by the court.

FACTS

The following facts are taken from the amended complaint, accepted as true, and all reasonable inferences are resolved in a manner most favorable to the plaintiffs. The court assumes fundamental familiarity with the facts and recites only the information necessary to resolve the dismissal motions.

The Fund is a multiemployer defined-benefit plan, which the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(37)(A), defines as "a plan to which more than one employer is required to contribute" and "which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer." The Fund is funded, at least in part, by contributions from employers who have entered into collective bargaining agreements with the Northwest Indiana Regional Council of

---

[2] Builders and Carpenters LCC was recently added as a plaintiff to the Brugos Action, but the claims of the third amended complaint are substantively similar to the second amended complaint that the plaintiffs in this action seek to consolidate.

Carpenters Union. The Union appointed half of the Fund's board of trustees (Messrs. Nannenga, Tharp, Sherwood, Brugos, Lakomek, and Novak), and the contributing employers appoint the other half (Messrs. Bohlen, Danielson, Beiker, and Robinson).

Mr. Nannenga served as the board of trustees' highest ranking union-appointed trustee from around 1985 until his recent retirement. He had the power to make and terminate union appointments to the board, and was responsible for appointing Mr. Sherwood and Mr. Novak. The board of trustees had complete control over the management and disposition of the Fund's assets.

In October 1998, the board of trustees voted to have the Fund purchase approximately 55 acres of then completely undeveloped property in a development known as Coffee Creek Center, in Porter County, Indiana. At the time of the vote, the board's members were Messrs. Bohlen, Beiker, Danielson and the late Lawerence Carlsson (appointed by the employers), Nannenga, Sherwood, and Novak (appointed by the Union). One Union-appointed position was vacant.

Messrs. Nannenga, Novak, and Bohlen voted for the purchase, while Messrs. Beiker, Danielson, and Carlsson voted against the purchase. Mr. Sherwood wasn't present at the vote; Mr. Nannenga voted on behalf of Mr. Sherwood and the absent Union position in favor of purchasing the property.

The purchase of the property closed in March 1999, with the Fund paying approximately $10 million for the property, plus various fees and expenses associated with the sale. Title was taken in the name of Builders and Carpenters

4

LCC, an entity wholly owned by the Fund, wholly controlled by the Board, and whose address is the same as that of the Union. The board of trustees has changed membership since the purchase, and now composes of Messrs. Bohlen, Danielson, Sherwood, and Beiker along with the new additions of Messrs. Brugos, Robinson, Lakomek, and Tharp (the "Post-Purchase Trustees"). The Fund has incurred and continues to incur additional expenses associated with its ownership and attempted development of the property.

STANDARDS OF REVIEW

Motions to dismiss were filed under both FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6).

Rule 12(b)(1) authorizes dismissal of complaints that bring no actionable claim within the subject matter jurisdiction of the federal courts. A motion to dismiss for lack of subject matter jurisdiction presents a threshold question of the court's power over a claim: the court must assure itself that it possesses jurisdiction over the subject matter of a case before it can proceed to take any action on the merits of the action. *See* Cook v. Winfrey, 141 F.3d 322, 325 (7th Cir. 1998).

In ruling on a motion brought under Rule 12(b)(1), the court may (but need not) accept the truth of the allegations in the complaint, and it may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt. *See* Bastien v. AT&T Wireless Serv., Inc., 205 F.3d 983, 990 (7th Cir.

5

2000); *see also* <u>Long v. Shorebank Dev. Corp.</u>, 182 F.3d 548, 554 (7th Cir. 1999) ("The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." (quotations and citations omitted)).

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint, not its underlying merits, *see* <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520 (7th Cir. 1990), and the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiffs. <u>Slaney v. Int'l Amateur Athletic Fed'n.</u>, 244 F.3d 580, 597 (7th Cir. 2001). Dismissal under Rule 12(b)(6) is proper only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. <u>Szumny v. American Gen. Fin.</u>, 246 F.3d 1065, 1067 (7th Cir. 2001).

Under a Rule 12(b)(1) motion, the party asserting jurisdiction bears the burden of demonstrating subject matter jurisdiction by competent proof. *See* <u>Thomas v. Gaskill</u>, 315 U.S. 442, 446 (1942); <u>Sapperstein v. Hager</u>, 188 F.3d 852, 855 (7th Cir. 1999). Under a Rule 12(b)(6) motion, the defendant bears the burden of showing the plaintiff has failed to allege a claim upon which relief can be granted. <u>Brown v. Budz</u>, 398 F.3d 904, 914 (7th Cir. 2005).

ANALYSIS

*A. STANDING*

The Board argues, under Rule 12(b)(1), that the plaintiffs don't have standing to bring their ERISA claims. This issue was jointly raised, either independently (as is the case with the Post-Purchase Trustees, Mr. Sherwood, and Mr. Beiker) or through incorporation, by every motion except those filed by Lake Erie Land, Co. and Builders and Carpenters LLC.

Whether the plaintiffs have standing to bring their claims "is a threshold matter because putative plaintiffs lacking standing are not entitled to have their claims litigated in federal courts." Family & Children's Ctr., Inc. v. Sch. of Mishawaka, 13 F.3d 1052, 1058 (7th Cir. 1994).

> [O]ur standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case or controversy requirement and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction.
>     The Article III limitations are familiar: The plaintiff must show that the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress. Although we have not exhaustively defined the prudential dimensions of the standing doctrine, we have explained that prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

Elk Grove Unified Sch. Dist. v. Newdow, 124 S. Ct. 2301, 2308-2309 (2004) (quotations and citations omitted). While standing doesn't depend on the merits of a plaintiff's contentions, "it often turns on the nature and source of the claim asserted . . . the standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting

7

persons in the plaintiff's position a right to judicial relief." <u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975) (quotations and citations omitted); *see also* <u>McConnell v. Federal Election Comm'n</u>, 540 U.S. 93, 227 (2003).

The Board and its co-defendants assert the plaintiffs cannot show they have suffered the constitutionally required "injury in fact," or the prudential limitations on standing preclude them from bringing suit on behalf of the Fund.

Because the only cognizable remedy that plaintiffs can seek on their challenged claims is to have the defendants make good the losses to the Fund, these claims must be brought in a representative capacity on the Fund's behalf.[3] *See* <u>Steinman v. Hicks</u>, 352 F.3d 1101, 1102 (7th Cir. 2003). Thus, the standing analysis begins with whether the plaintiffs can show: (1) that the fiduciaries (or co-fiduciaries) breached their duties to the Fund; (2) that such breaches of fiduciary duty caused the Fund to suffer some injury in fact; and (3) that a favorable judgment will redress this alleged injury. *See* <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 124 S. Ct. at 2309.

The defendants rely heavily on <u>Harley v. Minnesota Mining and Mfg. Co.</u>, 284 F.3d 901 (8th Cir. 2002), which held that beneficiaries suing under 29 U.S.C. § 1132(a)(2) did not have standing to bring a 29 U.S.C. § 1109(a)[4] claim against

---

[3] Those claims brought by the plaintiffs in their individual capacity, seeking injunctive or equitable relief are not at issue in the Board's motion, and no legal arguments have been presented by any other defendant challenging the plaintiffs' standing to bring such claims.

[4] While the plaintiffs sue under 29 U.S.C. § 1104(a), the remedy for breaches of § 1104(a) is found in § 1109(a). For purposes of the court's standing analysis, there is no substantive difference between the statutory relief sought by the <u>Harley</u> plaintiffs and the plaintiffs at bar.

fiduciaries of their pension plan when the alleged loss to the plan was so small as to cause no actual injury to the beneficiaries' interest. Applying <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432 (1999), the <u>Harley</u> court's analysis hinged on a finding that a loss to a defined-benefit plan's surplus is merely a loss to the party responsible for funding the plan:

> In a defined-benefit plan, if plan assets are depleted but the remaining pool of assets is more than adequate to pay all accrued benefits, then any loss is to plan surplus. As *Hughes Aircraft* made clear, Plaintiffs as beneficiaries have no claim or entitlement to its surplus. If the Plan's surplus disappears, it is 3M's obligation to make up any underfunding ... [and] if the Plan terminates with a surplus, the surplus may be distributed to 3M. Thus, the reality is that a relatively modest loss to Plan surplus is a loss only to 3M, the plan's sponsor.

<u>Harley v. Minnesota Mining</u>, 284 F.3d at 906 (citations and quotations omitted)[5]. The court then compared years of over-funding by the employer (which produced a significant surplus) against the particular loss to the plan by the alleged breach of fiduciary duty. Because the loss to the 3M plan was so small in compared to its surplus, the <u>Harley</u> court held there was no harm or threat of imminent harm to the plaintiffs' defined-benefits. *See* <u>Harley</u>, 284 F.3d at 907 ("For these reasons we conclude that plaintiffs' [breach of fiduciary duty claims] were properly dismissed if the Plan's surplus was sufficiently large that the ... loss did not cause actual injury to plaintiffs' interests in the Plan."). Without this harm to the beneficiaries'

---

[5] <u>Hughes</u> confirmed this circuit's rule regarding a beneficiary's lack of legal interest in the surplus of assets of their defined-benefits plan. *See* <u>Johnson v. Georgia-Pacific, Corp.</u>, 19 F.3d 1184, 1189 (7th Cir. 1994) ("A defined-benefit plan gives current and former employees property interests in their pension benefits, but not in the assets held in the trust.").

interests, the <u>Harley</u> plaintiffs didn't have standing to bring the breach of fiduciary claims.

<u>Harley</u>, though, was a summary judgment case and today's case is only at the pleadings stage — a stage at which this court cannot determine the alleged breach's long term impact on the Fund. "Complaints need not be elaborate, and in this respect injury (and thus standing) is no different from any other matter that may be pleaded generally . . . [and] at the pleading stage . . . [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." <u>Alliant Energy Corp. v. Bie</u>, 277 F.3d 916, 919 (7th Cir. 2002) (quotations and citations omitted).

The plaintiffs allege the Fund was "substantially damaged" by the defendants' breach of fiduciary duty. The Board submits evidence that the Fund is overfunded, but also concedes that the Fund itself was harmed by the underlying facts that support the plaintiffs' claims through reference to its own lawsuit for virtually the same claims. Whether damage to the Fund rises to such a level that endangers payout of the beneficiaries' defined-benefits is a question of fact; when standing turns on the truth of facts as alleged in the complaint, an "assumed evidentiary finding in plaintiffs' favor" is proper. <u>Sladek v. Bell Sys. Mgmt. Pension Plan</u>, 880 F.2d 972, 975 (7th Cir. 1989). The plaintiffs have Article III standing to bring their claims.

The plaintiffs still must show that the prudential limitations do not preclude them from bringing the claim: their complaint must "fall within the zone of

interests protected by the law invoked." <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 124 S. Ct. at 2309. This prudential limitation prevents cases "where no individual rights would be vindicated and restrict[s] access to federal courts to those litigants best suited to assert a particular claim." <u>Family & Children's Ctr., Inc. v. School of Mishawaka</u>, 13 F.3d at 1059 (quotations and citations omitted). "Unlike the Article III barriers to a suit, however, Congress may override the prudential limits on standing by statute." <u>Id.</u>

Prudential standing analysis begins with the statute: ERISA unambiguously grants the plaintiffs the standing needed to bring their claims. 29 U.S.C. § 1132(a)(2) specifically identifies participants and beneficiaries as parties who may sue fiduciaries on behalf of a plan for alleged breaches. *See* <u>Massachusetts Mut. Life Ins., Co. v. Russell</u>, 473 U.S. 134, 140 (1985) ("There can be no disagreement with the . . . conclusion that § 502(a)(2) [29 U.S.C. § 1132(a)(2)] authorizes a beneficiary to bring an action against a fiduciary who has violated § 409 [29 U.S.C. § 1109]"). When the statutory language provides a clear answer to a question of standing, the court's analysis ends there. *See* <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. at 438.

The Board argues that ERISA's plain language should be ignored because the Fund, by way of its trustees, has initiated its own suit against those it believes responsible for the alleged loss and its lawsuit is a superior vehicle to redress the injury to the Fund. The Board says that because any recovery for the alleged breach will go to the Fund only and would have no effect on the beneficiaries'

defined benefits, the plaintiffs' legal interests are protected, making the trustee the best suited litigant to bring the claim. Section 1132(a)(2), though, does not designate a trustee as preferred over any of the other of the enumerated parties to initiate suit on behalf of a pension plan. For standing purposes, then, ERISA places plaintiffs' claim in the "zone of interests" protected by the statute, and the prudential limitations on standing do not bar the plaintiffs' claims.

## B. MOOTNESS

The Post-Purchase Trustees, their joining co-defendants, and Mr. Bohlen argue, under Rule 12(b)(1), that some claims brought against them are moot. As with standing, whether a claim is moot is "always a threshold jurisdictional question" that the court must resolve at the outset. Worldwide Street Preachers' Fellowship v. Peterson, 388 F.3d 555, 558 (7th Cir. 2004). A claim that does not involve an actual ongoing controversy is moot, and the court must dismiss it for lack of jurisdiction. Wisconsin Right to Life, Inc. v. Schober, 366 F.3d 485, 490-491 (7th Cir. 2004). Unlike the issue of standing, the party asserting mootness bears the burden of persuasion. Id. at 491 (citing Friends of the Earth v. Laidlaw Envtl. Svs., 528 U.S. 167, 189 (2000)).

Claim X alleges the Post-Purchase Trustees and Messrs. Bohlen, Sherwood, Beiker, and Robinson, individually and in their capacities as trustees of the Fund breached their fiduciary duties by failing to make a claim under the required bond for the damages incurred in connection with the purchase of the property. The

Post-Purchase Trustees say this claim is now moot, and submit Carolyn Fredrick's affidavit to show that a claim was made under the bond on October 27, 2004. In response, the plaintiffs acknowledge the existence of the required bond, don't dispute that Ms. Frederick filed a claim under the bond, but argue against dismissal based on the manner in which the claim was filed.

Claim X of the complaint deals with the filing of the bond claim and nothing more. Whether the Post-Purchase Trustees or defendants Bohlen, Sherwood, Beiker, and Robinson breached their fiduciary duties by filing a claim late is irrelevant as to whether the bond claim was filed.[6] Claim X no longer raises a controversy to be resolved by the court, so it is dismissed for want of subject matter jurisdiction.

Mr. Bohlen moves to dismiss claims VIII and IX against him on the same grounds. Those claims allege that Mr. Bohlen, among others, breached his fiduciary duties by failing to bring suit on the Fund's behalf in an appropriate manner. At the time of the filing of plaintiffs' complaint, Mr. Bohlen was a named plaintiff in the Brugos Action, and as such, plaintiffs' eighth and ninth claim properly included him. On December 14, the court allowed an amended complaint in the Brugos Action, which converted Mr. Bohlen from a plaintiff to a defendant.

An amended complaint supplants the original complaint. 188 LLC v. Trinity Industries, Inc. 300 F.3d 730, 736 (7th Cir. 2002) ("An amended pleading

---

[6] Additionally, these alleged actions by the defendants are sufficiently covered by the plaintiffs' eleventh and twelfth claims, so the plaintiffs are not barred from redress of any injury suffered by these allegations.

ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and becomes functus officio."); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d ed.1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended complaint is interposed, the original pleading no longer performs any function in the case.").

While claim VIII and IX allege Mr. Bohlen breached his fiduciary duty in how he filed the original complaint, that complaint is now supplanted by a third amended complaint. For all intents and purposes, Mr. Bohlen is no longer a party responsible for executing the Brugos Action, and any claim alleging a breach of duty arising from such actions is no longer in controversy. Claims VIII and IX are moot as asserted against Mr. Bohlen, so the court dismisses them for lack of subject matter jurisdiction against him only.

## C. Sufficiency of the complaint

Nearly all the defendants challenge, under Rule 12(b)(6), the sufficiency of the claims against them. The Fund, the Administrator, the Board, and Builders and Carpenters LCC seek dismissal because they are included in the complaint for relief purposes only. The plaintiffs concur that the Fund, the Administrator, and the Board (as an entity) are included in the lawsuit as nominal defendants,

and that they should not incur legal expenses defending against the suit, but the plaintiffs urge the court to maintain them in this action in the event they are necessary to render effective relief.

The plaintiffs' asserted reason to maintain these parties in the action is unpersuasive. Pursuant to FED. R. CIV. P. 21, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the claim and on such terms that are just." The court has the power to add parties at any stage, even "after judgment for remedial purposes." Du Shane v. Conlisk, 583 F.2d 965, 967 (7th Cir. 1978). While the plaintiffs did not address Builders and Carpenters LCC's motion to dismiss on the same ground, the same reasoning would apply to it. Therefore, the court dismisses the Fund, the Administrator, the Board, and Builders and Carpenters LCC as unnecessary nominal defendants with notice that, if just reasons exist, they may be reinstated by motion of a party or the court.

As to claims I, II, and III defendants Danielson, Sherwood, and Beiker assert the plaintiffs have failed to state a claim upon which relief can be granted because the plaintiffs have not pleaded facts upon which relief could be granted under 29 U.S.C. § 1104(a)(1)(A) or (B). Plaintiffs need not, however, include all the facts or law showing they can prevail on their claim. FED. R. CIV. P. 8(a); Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003). Whether these trustees breached their fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) or (B) cannot be answered as a

matter of law at the pleading stage.[7] It is not beyond doubt that the plaintiffs can prove no set of facts entitling them to relief; dismissal of these claims for this reason is inappropriate.

None of the defendants attack Claims IV, V, or VI under Rule 12(b)(6). The motions asserted against these claims are either through incorporation of the Board's Rule 12(b)(1) motion, or through incorporation of another defendant's Rule 12(b)(6) motion directed to a different claim.

Mr. Novak and Mr. Sherwood say claim VII should be dismissed under Rule 12(b)(6) because the complaint lacks sufficient facts to substantiate the allegation. Mr. Sherwood says he never affirmatively acted for or against the alleged prohibited transaction, and the complaint lacks facts necessary to show he was in collusion with Mr. Nannenga. As already noted, a complaint need not include all facts necessary for recovery. Mr. Sherwood argues that his inaction shields him from liability under 29 U.S.C. § 1106(b). A fiduciary can be liable for breach of fiduciary duty based on his inaction under ERISA's fiduciary duty provisions. *See* Free v. Briody, 732 F.2d 1331 (7th Cir. 1984). Mr. Sherwood points to no *per se* rule barring recovery under 29 U.S.C. § 1106(b) under any set of facts based on a fiduciary's alleged  inaction. Dismissal of claim VII for these reasons is inappropriate.

---

[7] Fraham v. Equitable Life Assurance Soc'y of U.S., 137 F.3d 955 (7th Cir. 1988), the case cited by Messrs. Danielson, Bieker, and Sherwood does not articulate a *per se* rule regarding the duty of care that would preclude plaintiffs from recovery under any factual scenario. Fraham itself was resolved only after careful factual analysis of the issues. *See* id. at 960.

Claims VIII and IX allege that defendants Tharp, Danielson, Sherwood, Beiker, Brugos, Robinson, and Lakomek, individually and in their capacities as trustees of the Fund, breached their fiduciary duties when they failed to properly commence a cause of action on the Fund's behalf. The complaint identifies several pleading deficiencies and asserts a conflict of interest between those trustees and the Fund, which led to the trustees engaging in a prohibited transaction.

The Post-Purchase Trustees and their joining co-defendants argue that claims VIII and IX should be dismissed because of the creation of the Special Litigation Committee, a supposed independent fiduciary, and because of the well-pleaded complaint filed in the Brugos Action. The defendants rely on an array of factual assumptions outside the complaint to reach this conclusion. As already noted, such factual assumptions are improper at this stage, and regardless, there exists facts that could entitle the plaintiffs to relief. The court declines to dismiss these claims under Rule 12(b)(6).

Finally, claims XI and XII allege that defendants Nannenga, Bohlen, Tharp Danielson, Sherwood, Beiker, Brugos, Robinson, Lakomek, and Novak, individually or collectively, as current or former trustees of the Fund, engaged in conduct that constitutes numerous willful and egregious breaches of ERISA's fiduciary duty provisions warranting the removal of the current trustees of the Fund, barring all of them from ever again serving as a fiduciary of or service provider to any ERISA employee benefit plan, and forfeiting any benefits to which any of them may be entitled from the Fund.

The defendants argue for dismissal based on certain facts not alleged in the complaint: they highlight the lack of pleaded facts and past and present management trustees say they have no interest in receiving benefits from the Fund. Being bound, at this stage, to take the facts alleged in the complaint as true, the court again declines to dismiss these claims under Rule 12(b)(6).

## D. DUPLICITY

The Fund, Lake Erie Land Co., and their joining co-defendants argue that the claims brought by the plaintiffs are duplicative of those in the Brugos Action, and so should be either stayed or dismissed.

"[G]enerally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." Serlin v. Arthur Anderson & Co., 3 F.3d 221, 223 (7th Cir. 1993) (quotations and citations omitted). Once the court determines the claims are duplicative, it must "consider any special factors counseling for or against the exercise of jurisdiction in the case before [it]." Serlin v. Arthur Anderson & Co., 3 F.3d at 224 (quotations and citations omitted). A court faced with duplicative actions does not employ a strict first-to-file rule, see Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 629 (7th Cir. 1995), but it is

> important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings in [sic] issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter and an injunction should issue enjoining the prosecution of the second

> suit to prevent the economic waste involved in duplicating litigation which would have an adverse effect on the prompt and efficient administration of justice unless unusual circumstances warrant.

Martin v. Graybar Electric Co., 266 F.2d 202, 204 (7th Cir. 1959). While the preference is to stay a duplicative action rather than dismiss it, the court may dismiss claims when it is "absolutely clear that dismissal cannot adversely affect any litigant's interests." Central States Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co., 203 F.3d 442, 444 (7th Cir. 2000).

The plaintiffs argue against either a stay or dismissal of their claims. In doing so, the plaintiffs note that their standing to sue is equal to those who initiated the Brugos Action, note that they are not in privity with the plaintiffs in the Brugos Action (thus affecting a possible res judicata analysis), and argue that the plaintiffs in the Brugos Action do not adequately protect their interests.

The plaintiffs' arguments do not persuade the court. The plaintiffs' first seven claims are premised on the same facts, brought under virtually the same law, on behalf of the same party in interest (the Fund), and seek the same relief as those filed in the Brugos Action. Even the plaintiffs acknowledge the similarity of five of the claims.[8] The ERISA provision identifying the parties who can bring

---

[8] The plaintiffs unsuccessfully seek to distinguish the remaining two. Claim III, which deals with the co-fiduciary liability of trustees Bieker, Danielson, and Sherwood, was brought not in the original Brugos Action's complaint, but rather by Mr. Bohlen and Mr. Novak, who brought these three trustees into the Brugos Action as third-party defendants. This claim is duplicative.

Claim VII alleges, among other things, that Mr. Sherwood participated in a prohibited transaction with Mr. Nannenga. To the extent Mr. Sherwood is not explicitly named in the Brugos Action, the Fund's interest in recovering for the underlying alleged breach is protected by claim V of the Brugos Action's complaint. Claim VII, then, also is duplicative. Moreover, the plaintiffs' remaining claims cover their interests in any relief stemming from Mr. Sherwood's actions.

suit on the Fund's behalf doesn't designate a preferred litigator, and provides little help when two such parties file nearly identical claims on the Fund's behalf in the same court. If the plaintiffs are not in privity with those in the Brugos Action, and the Brugos plaintiffs do not adequately represent the plaintiffs' interests, the Federal Rules of Civil Procedure protect their interests. *See* FED. R. CIV. P. 24. These are not sufficient reasons to let duplicative claims proceed.

The plaintiffs' interests in relief based on their first seven alleged violations of ERISA (brought on behalf of the Fund) are protected by the law and the duplicative claims contained in the Brugos Action. It is a waste of judicial resources to proceed with both suits. The Fund, on behalf of which the Brugos Action was brought, should be free from the vexation of these concurrent claims. The presumption of staying claims I-VII is overcome, and claims I-VII are dismissed.

The plaintiffs' remaining claims differ. Claims VIII, IX, XI, and XII allege that past and current trustees breached their fiduciary duties based on their initiation and execution of the Brugos Action. While no correlating claims in the Brugos Action render these claims duplicative *per se*, they are rooted in the same facts and law as the Brugos Action. These four remaining claims seek redress for actions the trustees have taken and might take in future. In light of the facts and claims, it seems premature to allow discovery and dispositive motion briefing to proceed at this time. To do anything but stay the remaining claims would create a conundrum of legal strategy, discovery, and dispositive motions, any of which

could impair just resolution in both cases and create the unneeded expenditure of valuable judicial resources and legal costs.[9] In an ERISA case, the court of appeals lamented that:

> the [legal] costs are borne most heavily by those whom ERISA was intended to protect – beneficiaries and their families. We wish the trustees had considered the consequences of their actions . . . [w]e also wish . . . counsel had paused for a moment to realistically assess, at each stage of the game, the impact of extensive litigation on their clients. Had they done so, everyone involved would have been better off.

Leigh v. Engle, 858 F.2d 361, 370-371 (7th Cir. 1988). The court does not doubt the good intentions of counsel and their clients, but avoiding a similar result in this case would serve the interests of justice. The court stays the remaining claims in this action pending further order. The court also stays the cross-claims of Mr. Novak and Mr. Bohlen that stem from these remaining claims.

CONCLUSION

For the reasons set forth above, the court:

1. DENIES:

A. the Board's motion to dismiss [Doc. No. 94];

B. in part, the Post-Purchase Trustee's motion to dismiss to the extent consistent with this order,  [Doc. No. 95];

---

[9] The plaintiffs' legal interests are not affected by this outcome. Their claims against some past and all current board of trustees encompass any alleged difference in the amount the plaintiffs believe the Fund should recover in the Brugos Action and whatever entitled recovery they might receive.

C. Mr. Danielson's motion to dismiss [Doc. No. 98];

D. Mr. Pastrick's motion to dismiss [Doc. No. 102];

E. Mr. Sherwood and Mr. Beiker's motion to dismiss
[Doc. No. 103];

F. Mr. and Mrs. Nannenga's motion to dismiss [Doc. No. 104];

G. Mr. Ihle's motion to dismiss [Doc. No. 108];

H. Sand Creek Sales & Development, Inc. [Doc. No. 109];

I. in part, Mr. Bohlen and Mr. Novak's motion to dismiss to the
extent consistent with this order [Doc. No. 113];

J. Mr. Manous's motion to dismiss [Doc. No. 116];

K. the Fund's motion for leave to file excess pages
[Doc. No. 157];

L. the plaintiffs' motion to certify class WITHOUT PREJUDICE
with leave to re-file if/when appropriate [Doc. No. 83];

M. the plaintiffs' motion to consolidate [Doc. No. 91];

2. GRANTS:

A. the Fund's motion to dismiss [Doc. No. 92];

B. Lake Erie Land Company's motion to dismiss [Doc. No. 118];

C. Builders and Carpenters LCC's motion to dismiss
[Doc. No. 134];

D. in part, the Post-Purchase Trustee's motion to dismiss to
the extent consistent with this order,  [Doc. No. 95];

E. in part, Mr. Bohlen and Mr. Novak's motion to dismiss to
the extent consistent with this order [Doc. No. 113];

3. DISMISSES:

A. claim X as moot;

B. claim VIII and claim IX against Mr. Bohlen only as moot ;

C. the Fund, the Administrator, the Board of Trustees
(as an entity), and Builders and Carpenters as nominal
defendants;

D. claims I-VII as duplicative of claims filed in the Brugos
Action; and

4. STAYS claims XIII, IX, XI, and XII pending a well-received motion
and/or further order from the court.

SO ORDERED.

ENTERED: May 19, 2005

_____/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court